IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMARON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-148-MN |
| | ) | |
| APRINOIA THERAPEUTICS, LLC and | ) | |
| APRINOIA THERAPEUTICS LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Presently before the Court is the motion of Plaintiff Pharmaron, Inc. ("Plaintiff" or "Pharmaron") for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b).[1] (D.I. 13). For the reasons set forth below, the Court recommends that Plaintiff's motion be GRANTED.

## I.    <u>BACKGROUND</u>

On November 8, 2021, Pharmaron and Defendant Aprinoia Therapeutics Limited ("Aprinoia Limited") entered into a Master Services Agreement ("MSA"), whereby Pharmaron agreed to provide "professional laboratory and research services" for Aprinoia Limited. (D.I. 1 ¶ 14; D.I. 1, Ex. A (MSA)). On August 14, 2023, the parties executed an amendment to the MSA, clarifying that both Aprinoia Limited and Defendant Aprinoia Therapeutics, LLC ("Aprinoia

---

[1] Because Pharmaron requests not only the express amount identified in the Settlement Agreement (D.I. 1, Ex. C ¶ 2(C)), but also "reasonable attorneys' fees" pursuant to the Settlement Agreement (*id.* ¶ 11), the Court treats Pharmaron's motion as one under Rule 55(b)(2). *See Nat'l Salvage & Serv. Corp. v. Sula Valley Biogas, SA de C.V.*, C.A. No. 22-1428-TMH, 2023 WL 4744769, at *1 (D. Del. July 25, 2023) (request for reasonable attorneys' fees pursuant to contract not "sum certain"); 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2683 (4th ed. Sept. 2025) ("[T]he need to fix 'reasonable' attorney's fees prevents the clerk from entering a judgment under Rule 55(b)(1).").

LLC") (together, "Aprinoia") were legally responsible for payment under the MSA. (D.I. 1 ¶ 15; D.I. 1, Ex. B).

Pharmaron apparently fully performed the agreed-upon services, but Aprinoia failed to pay. (D.I. 1 ¶ 16). On February 1, 2024, Pharmaron sent Aprinoia a demand letter for payment of the "outstanding balance of $1,190,451.26 under the Final MSA." (*Id.* ¶ 17; D.I. 1, Ex. G (Demand Letter)). After receiving the demand letter, Aprinoia informed Pharmaron that it had, on January 26, 2024, filed paperwork with the U.S. Securities and Exchange Commission to pursue an initial public offering ("IPO") anticipated in March 2024. (D.I. 1 ¶ 19 (quoting D.I. 1, Ex. C at Recitals § I)). Aprinoia apparently indicated that it believed the proceeds from the IPO "would enable them to pay all or part of the balance under the Final MSA." (*Id.* ¶ 20 (citing D.I. 1, Ex. C at Recitals § J)). On February 16, 2024, Aprinoia made an initial payment to Pharmaron in the amount of $100,000. (D.I. 1 ¶ 23; D.I. 1, Ex. C ¶ 2(A)).

Relying on Aprinoia's representations regarding its planned IPO, Pharmaron entered into a Confidential Settlement and Release Agreement ("Settlement Agreement") with Aprinoia on March 7, 2024. (D.I. 1 ¶ 21; D.I. 1, Ex. C). Pursuant to that agreement, Pharmaron agreed to forbear litigation on the amount due under the MSA to allow Aprinoia "a period of time" to make full payment. (D.I. 1 ¶ 22 (citing D.I. 1, Ex. C at Recitals § M)). The Settlement Agreement provided for two alternative payment schedules: one that would apply in the event of a timely IPO (*i.e.*, by March 2024) and one that would apply in the event of an untimely IPO (*i.e.*, after March 2024). (D.I. 1 ¶ 24; D.I. 1, Ex. C ¶ 2(B)-(C)). Aprinoia apparently failed to file its IPO by the March 2024 deadline. (D.I. 1 ¶ 26). The parties subsequently executed two amendments to the Settlement Agreement, modifying the payment schedule in the event of an untimely IPO. (D.I. 1 ¶ 28; D.I. 1, Exs. D & E). Under the modified payment schedule, Aprinoia was required to make

monthly payments of $121,161.25 to Pharmaron beginning on September 2, 2024 and continuing until May 1, 2025.  (D.I. 1, Ex. E at 2).[2]

In the event that Aprinoia failed to make a payment under the schedule in Paragraph 2 (as modified by the amendments), the Settlement Agreement provides that "the remaining outstanding balance of the Amount Due shall be due and payable within fifteen (15) business days."  (D.I. 1 ¶ 25 (quoting D.I. 1, Ex. C ¶ 5)).  The Settlement Agreement further provides:

> Except as expressly set forth herein, each Party hereto shall bear its own attorneys' fees and costs arising from the actions of its own counsel in connection with this Settlement Agreement that were incurred prior to the date of execution of this Settlement Agreement; *provided, however*, that nothing within this Settlement Agreement shall prohibit or limit Pharmaron's rights to seek attorneys' fees and costs in the event that Aprinoia fails to make any of the payments provided for under this Settlement Agreement on or before the time periods set forth in Paragraph 2 above. In any action of any kind relating to this Settlement Agreement, the prevailing Party shall be entitled to collect reasonable attorneys' fees and costs from the non-prevailing Party in addition to any other recovery to which the prevailing Party is entitled.

(D.I. 1, Ex. C ¶ 11 (emphasis in original)).

Aprinoia did not make any payments under the Settlement Agreement's modified payment schedule.  (D.I. 1 ¶ 36; D.I. 19 ¶ 18).  On February 7, 2025, Pharmaron filed the present action against Aprinoia Limited and Aprinoia LLC, asserting one count for breach of the Settlement Agreement and seeking the balance of the amount due (*i.e.*, $1,090,451.26).  (D.I. 1 ¶¶ 32-38).  Service was effectuated on Aprinoia LLC on February 24, 2025, and the deadline to answer was

---

[2]     For reasons unbeknownst to the Court, Pharmaron redacted the dates and amounts from the Settlement Agreement and its corresponding amendments.  (*See* D.I. 1, Exs. C-E).  At the Court's request, Pharmaron submitted unredacted versions for *in camera* review.  (*See* D.I. 16).  Because there has been no showing that disclosure of these terms "will work a clearly defined and serious injury" to Pharmaron, the terms of the unredacted agreements will be discussed herein as necessary.  *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672-73 (3d Cir. 2019).

March 17, 2025.  (*See* D.I. 10 ¶¶ 2-3; *see also id.*, Ex. A).[3]  After Aprinoia LLC failed to respond to the Complaint or otherwise appear, the Clerk of Court entered default against Aprinoia LLC on February 3, 2026.  (D.I. 11).  On February 18, 2026, Pharmaron filed the present motion for default judgment, supported by attorney affidavit.  (D.I. 13).  On June 23, 2026, the Court held a hearing on Plaintiff's motion for default judgment (D.I. 23), and Plaintiff thereafter submitted supplemental declarations and a proposed final judgment (D.I. 18; D.I. 19; D.I. 20).  To date, Aprinoia LLC has not responded to the Complaint or otherwise appeared in this action.

## II.    LEGAL STANDARD

Entry of default judgment is a two-step process.  *Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc.*, 270 F.R.D. 161, 164 (D. Del. 2010).  First, the party seeking a default judgment must request that the Clerk of Court enter default against the party that has failed to answer the pleading or otherwise defend itself in the action.  FED. R. CIV. P. 55(a); *see also J & J Sports Prod., Inc. v. Kim*, C.A. No. 14-1170-LPS, 2016 WL 1238223, at *1 (D. Del. Mar. 29, 2016).  After default has been entered, a plaintiff may obtain a default judgment.  FED. R. CIV. P. 55(b); *see also J & J Sports*, 2016 WL 1238223, at *1.  If seeking relief in the form of a sum certain, the plaintiff may obtain a default judgment from the Clerk of Court.  FED. R. CIV. P. 55(b)(1); *see also J & J Sports*, 2016 WL 1238223, at *1.  Otherwise, "the party seeking default judgment must apply to the court for an entry of default judgment." *Tristrata Tech.*, 270 F.R.D. at 164.

Courts have discretion over whether to enter a default judgment in a particular case.  *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  The court considers three factors when determining if default judgment is appropriate:  "(1) prejudice to the plaintiff if default is denied,

---

[3]    Plaintiff never served Aprinoia Limited and has only ever pursued these proceedings as to Aprinoia LLC.  When the Court pointed this out, Plaintiff dismissed Aprinoia Limited from the case.  (*See* D.I. 21 & 22).

4

(2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). When default judgment is entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (cleaned up). As to damages, however, a court must calculate the appropriate amount of damages if not for a sum certain; the court cannot merely accept plaintiff's representations. *See PPG Indus. Inc v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 161 (3d Cir. 2022); *Palmer v. Slaughter*, C.A. No. 99-899-GMS, 2000 WL 1010261, at *2 (D. Del. July 13, 2000).

## III.    DISCUSSION

### A.    Liability

Plaintiff has established that entry of default judgment is warranted. All three factors weigh in favor of granting Plaintiff's motion for default judgment. *See Chamberlain*, 210 F.3d at 164.

As to the first factor, taking the allegations in the Complaint as true, Pharmaron "will undoubtedly suffer prejudice if this motion is denied because it would otherwise be unable to recover damages for [Aprinoia LLC's] breaches." *DoiT Int'l, LTD v. BlackSwan Techs., Inc.*, C.A. No. 23-560-MN, 2023 WL 6211722, at *2 (D. Del. Sept. 25, 2023), *report and recommendation adopted*, 2023 WL 7408034 (D. Del. Nov. 9, 2023); *see also Adru Tech Ltd. v. DS Games, Inc.*, C.A. No. 24-901-MN, 2025 WL 315353, at *3 (D. Del. Jan. 28, 2025). The first factor thus weighs in favor of granting Plaintiff's motion for default judgment.

As to the second factor, Aprinoia LLC does not appear to have a litigable defense given that Aprinoia LLC failed to answer or rebut any claims in the Complaint. *See J & J Sports Prod., Inc. v. M&I Hosp. of Delaware Inc.*, C.A. No. 15-353-MN, 2018 WL 6040254, at *2 (D. Del. Nov.

19, 2018) ("It is not apparent that M&I has a litigable defense given its failure to respond to the action."). The second factor also weighs in favor granting Plaintiff's motion for default judgment.

With respect to the last factor, because Aprinoia LLC was properly served and refused to respond, the Court can infer that Aprinoia LLC's delay was due to culpable conduct. *See Skeway v. China Nat. Gas, Inc.*, C.A. No. 10-728-RGA, 2015 WL 451435, at *1 (D. Del. Jan. 30, 2015); *see also Satira Shipping Co. Ltd. v. Glob. Am. Transp. LLC*, C.A. No. 24-1202-MN, 2025 WL 2378988, at *3 (D. Del. Aug. 15, 2025). Therefore, the third and final factor also weighs in favor of granting Plaintiff's motion for default judgment.

### B.    Damages

Having found that entry of default judgment is appropriate, the Court now turns to damages. Pharmaron seeks entry of an award totaling $1,090,451.26 plus pre-judgment interest, post-judgment interest and attorneys' fees and costs. (*See* D.I. 1 ¶¶ 36 & 38; D.I. 13 ¶ 12; D.I. 19 ¶ 7). Having considered the applicable law, Pharmaron's submissions and the evidence presented, the Court finds that the requested relief, as further outlined below, is appropriate.

First, the Court recommends that Pharmaron be awarded $1,090,451.26 in damages under the Settlement Agreement. The Settlement Agreement defines the "Amount Due" as $1,190,451.26 (D.I. 1, Ex. C at Recitals § H) and states that Aprinoia made an "Initial Payment" of $100,000 to Pharmaron in February 2024 (*id*. ¶ 2(A)). Paragraph 2(C) of the Settlement Agreement provides a monthly payment plan in the event of an untimely IPO, under which Aprinoia was to pay Pharmaron the outstanding balance of $1,090,451.26. (*Id*. ¶ 2(C)). Because Pharmaron did not effect a timely IPO by March 2024, the "Untimely IPO" payment schedule and outstanding balance applies. (*Id*.). Pharmaron and Aprinoia subsequently modified the dates of the "Untimely IPO" payment schedule but did not modify the monthly payment amounts or total

outstanding balance. (*See* D.I. 1, Exs. D & E). According to Clarissa Barrow, Pharmaron's senior manager of accounts receivable, Aprinoia has "made no payments to Pharmaron under the settlement agreements other than the Initial Payment referenced in Section 2(A)." (D.I. 19 ¶ 18). As such, the Court finds that Pharmaron is entitled to $1,090,451.26 in damages under the Settlement Agreement because that is the amount still outstanding.

Second, the Court recommends that pre-judgment interest be awarded using a simple fixed rate. Because the Settlement Agreement is silent as to the interest rate to be applied, "the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due." 6 *Del. C.* § 2301(a).[4] After Aprinoia failed to remit the first monthly payment of $121,161.25 on September 2, 2024, "the remaining outstanding balance" became "due and payable within fifteen (15) business days" (*i.e.*, September 23, 2024). (D.I. 1, Ex. C ¶ 5). Because the remaining outstanding balance is the entire outstanding balance, the Court recommends that pre-judgment interest on the entire outstanding balance be calculated from September 23, 2024. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) ("[Pre-judgment] interest is to be computed from the date payment is due."). And because the Federal Reserve discount rate was 5% on September 23, 2024,[5] a rate of 10% is appropriate. *See Corso v. Concordia Healthcare USA, Inc.*, C.A. No. 21-353-SB, 2023 WL 2930255, at *2 (D. Del. Apr. 13, 2023); *Balooshi v. GVP Glob. Corp.*, No. CV N19C-10-215 CEB, 2022 WL 576819, at *14 (Del. Super. Ct. Feb. 25, 2022), *aff'd*, 285 A.3d 839 (Del. 2022). Finally, a simple and fixed rate is appropriate, which Pharmaron does not dispute (D.I. 18 ¶ 13). *See CIGNEX Datamatics, Inc. v.*

---

[4]    "The court's decision to award prejudgment interest in an action based on diversity is a matter of state law." *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 162 (3d Cir. 2011). The Settlement Agreement specifies that Delaware law applies. (D.I. 1, Ex. C ¶ 12(A)).

[5]    Rate obtained from https://www.federalreserve.gov/datadownload/Choose.aspx?rel=H15. *See also* https://fred.stlouisfed.org/series/DPCREDIT.

*Lam Rsch. Corp.*, C.A. No. 17-320 (MN), 2021 WL 212692, at *2 (D. Del. Jan. 21, 2021). Therefore, the Court recommends that pre-judgment interest be awarded on the $1,090,451.26 amount at a rate of 10% from September 23, 2024 until the date that judgment is entered.[6]

Third, the Court recommends that Pharmaron be awarded $30,302.02 in attorneys' fees and costs. As the "prevailing Party" in an "action of any kind relating to [the] Settlement Agreement," Pharmaron is entitled to collect its reasonable attorneys' fees and costs incurred during this litigation. (*See* D.I. 1, Ex. C ¶ 11). After the June 2026 hearing, Pharmaron's counsel submitted documentation evidencing $47,572.50 in attorneys' fees and $962.76 in costs ($48,535.26 total) incurred between January 2024 and June 2026. (*See* D.I. 18 ¶¶ 3-9; *see also* D.I. 18, Ex. A). Pharmaron's requested fees and costs can be categorized as: (1) pre-litigation fees and costs incurred between January 2024 and November 2024, amounting to $18,205.50 in fees and $27.74 in costs ($18,233.24 total) and (2) litigation fees and costs incurred between December 2024 and June 2026, amounting to $29,637.00 in fees and $935.02 in costs ($30,302.02 total).[7] (*See* D.I. 18, Ex. A at 4-79). Pharmaron fails to explain – let alone, demonstrate – why

---

[6] Despite the Court painstakingly walking through the Settlement Agreement, its amendments and Delaware's pre-judgment interest provision during the June 2026 hearing, Pharmaron still got it wrong. (*See* D.I. 21 at 4:12-11:5). First, rather than using the monthly payment plan provided in the Second Amendment to the Settlement Agreement (D.I. 1, Ex. E), Pharmaron submits that pre-judgment interest should be calculated using the no-longer-operative monthly payment plan provided in the original Settlement Agreement. (D.I. 19 ¶ 19 (requesting pre-judgment interest be calculated as of May 1, 2024)). Second, Pharmaron ignores the 15-business day limitation of the Settlement Agreement (D.I. 1, Ex. C ¶ 5) by requesting that pre-judgment interest on the entire balance be computed from first date that Aprinoia failed to make payment. (D.I. 19 ¶ 19). And finally, Pharmaron incorrectly suggests that pre-judgment interest should be calculated using the Federal Reserve discount rate as of the date Pharmaron submitted its declarations (June 25, 2026), as opposed to the date when the outstanding balance became due and payable (September 23, 2024). (D.I. 18 ¶ 12; D.I. 19 ¶ 11).

[7] The pre-litigation fees and costs largely relate to the pre-Settlement Agreement demand letter as well as the negotiation and drafting of the Settlement Agreement and its corresponding amendments. (*See* D.I. 18, Ex. A at 4-24; *see also* D.I. 1, Ex. C ¶ 11

the requested pre-litigation fees and costs fall within the scope of Paragraph 11 of the Settlement Agreement, which awards attorneys' fees and costs incurred in the context of litigation and after breach of the agreement. (*See* D.I. 1, Ex. C ¶ 11 (awarding reasonable attorneys' fees and costs incurred in an "action" and "in the event that Aprinoia fails to make any of the payments provided for under this Settlement Agreement")). The Court recommends that Pharmaron bear its own pre-litigation costs and fees. But with respect to the litigation activity, the Court finds that the requested attorneys' fees and costs are reasonable and within the scope of the agreement. Therefore, the Court recommends that Pharmaron be awarded $29,637.00 in fees and $935.02 in costs ($30,302.02 total).

Finally, post-judgment interest is mandatory for damages awarded in civil cases in federal district court. *See* 28 U.S.C. § 1961(a); *see also Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988) (post-judgment interest governed by federal law in diversity actions). Pharmaron is entitled to post-judgment interest pursuant to the federal statutory rate from the date that judgment is entered until satisfied. Such interest accrues on the entire amount included in the judgment – *i.e.*, the outstanding balance ($1,090,451.26), attorneys' fees and costs ($30,302.02) and pre-judgment interest (to be calculated upon entry of judgment, as detailed above). *See Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 174 (3d Cir. 2010); *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 530 (3d Cir. 2001).

---

("Except as expressly set forth herein, each Party hereto shall bear its own attorneys' fees and costs arising from the actions of its own counsel in connection with this Settlement Agreement that were incurred prior to the date of execution of this Settlement Agreement . . . .")). To contrast, the litigation fees and costs largely relate to the Complaint, application for entry of default and present motion for default judgment. (*See* D.I. 18, Ex. A at 25-79).

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that Pharmaron's motion for default judgment be GRANTED.

The Court further recommends that judgment be entered in favor of Pharmaron and against Aprinoia LLC in the amount of: (1) $1,090,451.26 plus pre-judgment interest at a simple and fixed rate of 10% from September 23, 2024 until the date that judgment is entered; (2) $30,302.02 in attorneys' fees and costs and (3) post-judgment interest pursuant to 28 U.S.C. § 1961 from the date judgment is entered until the judgment is satisfied. Pharmaron is directed to serve a copy of this Report and Recommendation on Aprinoia LLC and shall file proof of such service with the Court.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: July 17, 2026

_____
UNITED STATES MAGISTRATE JUDGE